UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**Zachary Z. King**, **Craig E. Dyar, Jr.**, and **Anthony L. Wilson**,

            Plaintiffs,

vs.

**City of Minneapolis**; and **Officer Heather Sterzinger**, **Officer Yolanda Wilks**, **Officer Kenneth Feucht**, **Officer Adam Lewis**, **Officer Michael Williams**, **Officer Joshua Stewart**, and **Sergeant Darah Westermeyer**, in their individual and official capacities,

            Defendants.

Court File No. 13-cv-01431 (DWF/JJK)

**FIRST AMENDED COMPLAINT WITH JURY DEMAND**

---

## INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution, against Officer Heather Sterzinger, Officer Yolanda Wilks, Officer Kenneth Feucht, Officer Adam Lewis, Officer Michael Williams, Officer Joshua Stewart, and Sergeant Darah Westermeyer, police officers of the City of Minneapolis, in their individual and official capacities, and against the City of Minneapolis.

2. It is alleged that the individual Police Officer Defendants retaliated against Plaintiffs for exercising their right to free speech, thereby violating their rights under the First Amendment to the United States Constitution. It is also alleged that the individual Police Officer

1

Defendants made an unreasonable seizure of the persons of Plaintiffs, violating their rights under the Fourth Amendment to the United States Constitution. It is also alleged that the individual Police Officer Defendants discriminated against Plaintiff King on the basis of his race, in violation of the Fourteenth Amendment Equal Protection Clause. It is also alleged that these violations were committed as a result of policies and customs of the City of Minneapolis.

## JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

## VENUE

4. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

## PARTIES

5. Plaintiffs Zachary Z. King, Craig E. Dyar, Jr., and Anthony L. Wilson were at all material times residents of the State of Minnesota, and of full age. Plaintiffs King, Dyar, and Wilson are African-American/Black males.

6. Defendant Police Officers were at all times relevant to this complaint duly appointed and acting officers of the police department of the City of Minneapolis, acting under color of law,

to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of Minneapolis.

7. The City of Minneapolis, Minnesota, is a municipal corporation and the public employer of the Defendant Police Officers. Defendant City of Minneapolis is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials, including Officers Sterzinger, Wilks, Feucht, Lewis, Williams, and Westermeyer.

## FACTS

8. On April 30, 2012, at approximately 2:00 a.m., Plaintiffs King, Dyar, and Wilson were preparing to drive home from Epic Entertainment nightclub in downtown Minneapolis after participating in a live concert performance which was held there that evening.

9. Plaintiffs Dyar and Wilson exited Epic first and started walking towards a nearby parking lot, located at the intersection of 5th Street North and 2nd Avenue North, where their vehicle was parked. Plaintiff King stayed behind for a short period to speak with someone at Epic about the concert.

10. As Plaintiffs Dyar and Wilson approached the intersection of 5th Street North and 2nd Avenue North, several of the Defendant Police Officers told them to turn right and walk on 2nd Avenue North. Plaintiffs Dyar and Wilson explained to the officers that they wanted to cross the street and continue walking on 5th Street North towards the parking lot where their vehicle was parked. The Defendant Officers refused to permit Plaintiffs Dyar and Wilson to cross the street and instructed them to turn right and walk away from the area on 2nd Avenue

North. The Defendant Officers also told Plaintiffs Dyar and Wilson to "get the fuck out of here."

11. Plaintiffs Dyar and Wilson followed the officers' directive, turned right onto 2nd Avenue North, and started walking away from the intersection.

12. Moments after, Plaintiff King exited Epic and also headed towards the same parking lot to meet with Plaintiffs Dyar and Wilson to drive home. Plaintiff King ran into the same officers at the intersection of 5th Street North and 2nd Avenue North and was also instructed to turn right and walk away from the area on 2nd Avenue North. Plaintiff King explained that he simply wanted to get to the parking lot, which was on 5th Street North, but the officers nonetheless refused to permit Plaintiff King to cross the street. Plaintiff King followed the officers' directives, turned right onto 2nd Avenue North, and proceeded to walk away from the area.

13. As Plaintiff King turned right onto 2nd Avenue North, he saw Plaintiffs Dyar and Wilson walking on the sidewalk a short distance away and caught up with them.

14. As Plaintiffs were walking on the sidewalk, per the Defendant Officers' instructions, Plaintiffs saw a Minneapolis Police ATV speeding down the sidewalk and headed directly towards them from behind. The ATV was occupied by Defendant Officers Williams and Lewis, was approaching Plaintiffs at a relatively high rate of speed, and the Defendant Officers were continuously honking their horn at the Plaintiffs in an apparent effort to have Plaintiffs clear the sidewalk.

15. Plaintiffs, in response to the Defendant Officers' actions, made their best effort to clear the sidewalk and allow the ATV to pass. Defendant Officers Williams and Lewis parked their

ATV directly next to the Plaintiffs, got out, and started harassing the Plaintiffs without justification.

16. The Defendant Officers pushed and forced Plaintiffs Dyar and Wilson off the sidewalk and into the street and, at the same time, were yelling and ordering Plaintiffs Dyar and Wilson to get back on the sidewalk. Some of the Defendant Officers were yelling at Plaintiffs Dyar and Wilson to "get out of here" and pointing away from the sidewalk while other Defendant Officers were ordering Plaintiffs Dyar and Wilson to get back on the sidewalk. Plaintiffs naturally were confused and unable to follow both orders at the same time.

17. Having realized that Plaintiffs were being harassed and mistreated by the Defendant Officers without justification, Plaintiff King started to record the encounter with his cell phone to preserve the incident as evidence of police misconduct. Plaintiff King also immediately notified the Defendant Officers that he was recording and informed them that he would be sharing the video footage with the press.

18. Plaintiffs Dyar and Wilson, making their best effort to simply leave the area, stepped away from the Defendant Officers and continued walking away from the area on 2nd Avenue North, as they had been previously instructed. Plaintiffs Dyar and Wilson expressed their discontent with the Defendant Officers' harassment and misconduct as they were walking away. The Defendant Officers then approached Plaintiff Wilson and arrested him without justification as he was attempting to simply leave the area.

19. Next, one of the Defendant Officers grabbed Plaintiff Dyar and pushed him back on the sidewalk. Plaintiff Dyar, now on the sidewalk, started to verbally express his discontent regarding the Defendant Officers' harassment and misconduct.

20. Plaintiff King continued to record the encounter and announced, multiple times, that he was recording and that he could share the video footage with the press. At this time, Defendant Officer Sterzinger approached Plaintiff King and began to mock and intimidate him by shaking a can of pepper-spray in front of him and stating, "Hi Channel 9 – Bye Channel 9!"

21. Defendant Officer Sterzinger then approached and arrested Plaintiff Dyar without justification while Plaintiff Dyar was expressing his discontent with the Officers' harassment and misconduct.

22. As the Defendant Officers were arresting Plaintiff Dyar, Plaintiff King continued to record. Defendant Officer Sterzinger then released Plaintiff Dyar to the other Officers and, along with Defendant Officer Stewart, turned her attention to Plaintiff King. Officer Stewart then instructed Plaintiff King to back up, and Plaintiff King immediately followed the order by backing up. Next, Defendant Officer Sterzinger placed Plaintiff King under arrest without justification and confiscated his cell phone.

23. After placing Plaintiff King under arrest, the Defendant Officers seized King's cell phone, which contained the recording of the events described above.

24. Throughout the incident, the Defendant Officers referred to Plaintiff Dyar as "Beard," as if Plaintiff Dyar was a terrorist. At the time, Plaintiff Dyar had a full beard on his face.

25. At one point during the incident, the Defendant Officers threatened Plaintiff Dyar by asking him whether he ever felt a finger going through his neck and to the back of his throat. Plaintiff Dyar was not resisting arrest or interfering with the Defendant Officers when these threats were made.

26. The Defendant Officers used excessive force during their encounter with the Plaintiffs when they pushed, shoved, and handcuffed Plaintiffs. As a result of this use of force, Plaintiffs endured physical pain and suffering and emotional distress.

27. While waiting to be transported to the Hennepin County Jail, Plaintiff King overheard the Defendant Officers outside. King heard the Defendant Officers talking about him and stating, "Another King, we've got another King," and then laughing at these comments. April 30, 2012, the date of Plaintiffs' arrest, was the 20th Anniversary of the Rodney King riots in Los Angeles, CA.

28. Shortly after, the Defendant Officers transported Plaintiffs and booked them into the Hennepin County Jail.

29. The Defendant Officers then falsified and fabricated their police reports to justify Plaintiffs' arrests.

30. Plaintiff Dyar suffered cuts and bruises on his face and right elbow as well as injuries to his shoulder, which required medical treatment.

31. Plaintiff King suffered cuts and bruises on his wrists, long-term numbness in his fingers for which he sought medical treatment, and a sprained ankle.

32. As a result of the Defendant Officers' arrest, Plaintiff King was unlawfully detained and jailed for 2 days. Plaintiff King was never charged with any crimes as a result of this incident.

33. As a result of the Defendant Officers' arrest, Plaintiff Dyar was unlawfully detained and jailed for 3 days. All criminal charges against Dyar were later dismissed.

34. As a result of the Defendant Officers' arrest, Plaintiff Wilson was unlawfully detained and jailed for 3 days. All criminal charges against Wilson were later dismissed.

35. As a result of the Defendants' unlawful arrest, Plaintiffs were featured in the "Busted" paper.

36. As a result of the Defendants' actions, Plaintiffs suffered severe emotional distress, humiliation, and embarrassment.

37. At all times during the events described above, the Defendant Police Officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

## INJURIES SUFFERED

38. As a direct and proximate result of the said acts of the Defendants, Plaintiff King suffered the following injuries and damages:

    a. Violation of his constitutional right to free speech under the First Amendment to the United States Constitution;

    b. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures of his person;

    c. Violation of his constitutional right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution;

    d. Physical pain and suffering, in an amount in excess of $50,000;

    e. Emotional trauma and suffering, in an amount in excess of $50,000;

    f. Unlawful confinement, in an amount in excess of $50,000;

    g. Past and future medical expenses, in an amount to be determined at trial.

39. As a direct and proximate result of the said acts of the Defendants, Plaintiff Dyar suffered the following injuries and damages:

    a. Violation of his constitutional right to free speech under the First Amendment to the United States Constitution;

    b. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures of his person;

    c. Physical pain and suffering, in an amount in excess of $50,000;

    d. Emotional trauma and suffering, in an amount in excess of $50,000;

    e. Unlawful confinement, in an amount in excess of $50,000;

    f. Medical expenses, in an amount to be determined at trial.

40. As a direct and proximate result of the said acts of the Defendants, Plaintiff Wilson suffered the following injuries and damages:

    a. Violation of his constitutional right to free speech under the First Amendment to the United States Constitution;

    b. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures of his person;

    c. Physical pain and suffering, in an amount in excess of $50,000;

    d. Emotional trauma and suffering, in an amount in excess of $50,000;

    e. Unlawful confinement, in an amount in excess of $50,000.

41. The actions of the Defendant Police Officers violated the following clearly established and well settled federal constitutional rights of Plaintiffs:

    a. Right to free speech;

    b. Freedom from unreasonable seizures of their persons;

c. Freedom from the use of excessive, unreasonable, and unjustified force against their persons;

d. Right to equal protection of the laws.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION AGAINST INDIVIDUAL DEFENDANTS

42. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

43. Based on the above factual allegations, the Defendant Officers, through their actions, acting under the color of state law, violated Plaintiffs' constitutional right to free speech under the First Amendment to the United States Constitution. Specifically, Plaintiffs exercised their right to free speech protected by the First Amendment when they expressed their discontent with the Defendant Officers' conduct, stated that they would report the Defendant Officers' misconduct to the press, and recorded the Defendant Officers with a cell phone. The Defendant Officers took action against Plaintiffs that was sufficiently serious to chill a person of ordinary firmness from engaging in protected speech when they pushed, shoved, threatened, intimidated, arrested Plaintiffs, and seized King's cell phone, all without justification. The Defendant Officers engaged in this conduct against Plaintiffs in retaliation for exercising their First Amendment right to free speech.

44. As a result of these constitutional violations, Plaintiffs suffered damages as aforesaid.

### COUNT 2: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE AND EXCESSIVE FORCE AGAINST INDIVIDUAL DEFENDANTS

45. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

46. Based on the above factual allegations, the Defendant Officers, through their actions, acting under the color of state law, violated Plaintiffs' constitutional right to remain free from unreasonable seizures and use of excessive force under the Fourth Amendment to the United States Constitution when they pushed, shoved, and handcuffed Plaintiffs, all without justification.

47. As a result of these constitutional violations, Plaintiffs suffered damages as aforesaid.

### COUNT 3: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE AND FALSE ARREST AGAINST INDIVIDUAL DEFENDANTS

48. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

49. Based on the above factual allegations, the Defendant Officers, through their actions, acting under the color of state law, violated Plaintiffs' constitutional right to remain free from unreasonable seizures under the Fourth Amendment to the United States Constitution when the Defendant Officers arrested Plaintiffs, took them into custody, and booked them into the Hennepin County Jail, all without a warrant and without probable cause to believe that Plaintiffs had committed a crime. The Defendant Officers also violated Plaintiff King's constitutional right to remain free from unreasonable seizures under the Fourth Amendment to the United States Constitution when they seized and confiscated his cell phone without justification.

50. As a result of these constitutional violations, Plaintiffs suffered damages as aforesaid.

### COUNT 4: 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT VIOLATION OF EQUAL PROTECTION OF THE LAWS AGAINST INDIVIDUAL DEFENDANTS

51. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

52. Based on the above factual allegations, the Defendant Officers, through their actions, acting under the color of state law, violated Plaintiff King's and Plaintiff Dyar's constitutional

rights to the equal protection of the laws under the Fourteenth Amendment to the United States Constitution. Specifically, the Defendant Officers treated Plaintiff King, an African-American/Black minority, differently and improperly on the basis of his race/color when they unlawfully arrested him and later laughed at his name, stating, "Another King, we've got another King." The Defendant Officers treated Plaintiff Dyar, an African-American/Black minority, differently and improperly on the basis of his race/color and physical appearance when they unlawfully arrested him, assaulted him, and referred to him as "Beard."

53. As a result of these constitutional violations, Plaintiffs King and Dyar suffered damages as aforesaid.

### COUNT 5: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION AGAINST THE CITY OF MINNEAPOLIS

54. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

55. Prior to April 30, 2012, Defendant City of Minneapolis developed and maintained policies and/or customs exhibiting deliberate indifference towards the constitutional rights of persons in the City of Minneapolis or in the custody of the City of Minneapolis, which caused the violations of Plaintiffs' constitutional rights.

56. It was the policy and/or custom of Defendant City of Minneapolis to inadequately supervise and train its employees, including the Defendant Officers, thereby failing to adequately prevent and discourage further constitutional violations on the part of its employees.

57. As a result of these policies and/or customs and lack of training, employees of the City of Minneapolis, including the Defendant Officers, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

58. These policies and/or customs and lack of training were the cause of the violations of Plaintiffs' constitutional rights alleged herein.

### COUNT 6: ASSAULT AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

59. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

60. Based on the above factual allegations, the Defendant Officers assaulted Plaintiffs. Specifically, the Defendant Officers engaged in wrongful, malicious, unlawful, and intentional conduct intended to put Plaintiffs in immediate, imminent, and direct fear and apprehension of an offensive touching by the Defendant Officers when they threatened, taunted, physically assaulted, and arrested Plaintiffs without justification.

61. As a direct and proximate result of this assault, Plaintiffs suffered damages as aforesaid.

### COUNT 7: BATTERY AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

62. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

63. Based on the above factual allegations, the Defendant Officers battered Plaintiffs. Specifically, the Defendant Officers engaged in intentional, offensive, and unpermitted contact with Plaintiffs when they physically assaulted and arrested Plaintiffs without justification.

64. As a direct and proximate result of this battery, Plaintiffs suffered damages as aforesaid.

## **RELIEF REQUESTED**

**WHEREFORE, Plaintiffs request that this Court grant the following relief:**

a. Issue an order granting Plaintiff King judgment against Defendants, finding that Defendants violated his constitutional rights to free speech, to remain free from unreasonable seizures and excessive use of force, and to equal protection of the laws under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and finding that Defendants are liable to Plaintiff King for all damages resulting from these violations;

b. Issue an order granting Plaintiff Dyar judgment against Defendants, finding that Defendants violated his constitutional rights to free speech, to remain free from unreasonable seizures and excessive use of force, and to equal protection of the laws under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and finding that Defendants are liable to Plaintiff Dyar for all damages resulting from these violations;

c. Issue an order granting Plaintiff Wilson judgment against Defendants, finding that Defendants violated his constitutional rights to free speech and to remain free from unreasonable seizures and excessive use of force under the First and Fourth Amendments to the United States Constitution, and finding that Defendants are liable to Plaintiff Wilson for all damages resulting from these violations;

d. Award of compensatory damages to Plaintiffs against all Defendants, jointly and severally, in an amount in excess of $50,000;

e. Award of punitive damages to Plaintiffs against all Defendants, jointly and severally;

f. Award of reasonable attorney's fees and costs to Plaintiffs pursuant to 42 U.S.C. § 1988;

g. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFFS HEREBY DEMAND A JURY TRIAL.**

                                              THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: September 12, 2013         By: s/ Zorislav R. Leyderman
                                              ZORISLAV R. LEYDERMAN
                                              Attorney License No. 0391286
                                              Attorney for Plaintiff
                                              The Law Office of Zorislav R. Leyderman
                                              222 South 9th Street, Suite 1600
                                              Minneapolis, MN 55402
                                              Tel: (612) 876-6626
                                              Email: zrl@ZRLlaw.com